IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
SMALL CLAIMS DIVISION

| | |
|---|---|
| Daryl Clarke, *Plaintiff*, v. Synchrony Financial, Inc., d/b/a/ Synchrony Bank *and* Experian Information Solutions, Inc., *Defendants*. | Case Number: _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Daryl Clarke** ("**Mr. Clarke**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Synchrony Financial, Inc.** d/b/a **Synchrony Bank** ("**Synchrony**") and **Experian Information Solutions, Inc.** ("**Experian**") (jointly, the "**Defendants**"), stating as follows:

### PRELIMINARY STATEMENT

1.  This is an action for damages not exceeding $8,000, exclusive of fees and costs, brought by Mr. Clarke against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

### JURISDICTION

2.  Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and § 34.01, Fla. Stat.

3.  The Defendants are subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

4. Venue is proper in Polk County, Florida, pursuant to § 47.051, Fla. Stat., because the acts complained of were committed and / or caused by the Defendants within Polk County.

## PARTIES

5. **Mr. Clarke** is a natural person residing in the City of Lakeland, Polk County, Florida.

6. Mr. Clarke is a *Consumer* as defined by 15 U.S.C. 1681a(c).

7. **Synchrony** is a Delaware corporation whose Delaware registered agent is **Corporation Service Company, 1209 Orange St., Wilmington, DE 19801**.

8. **Experian** is an Ohio corporation, with a principal business address of 475 Anton Blvd., Costa Mesa CA 92626.

9. Experian is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Rd. Plantation, FL 33324**.

10. Experian is a nationwide *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce, specifically the mail and internet, for the purpose of preparing or furnishing consumer reports. As a CRA, Experian is aware of its obligations under the FCRA.

## FACTUAL ALLEGATIONS

11. Around April 2021, Mr. Clarke needed to finance a medical procedure.

12. Mr. Clarke opened a Care Credit account issued through Synchrony to cover the costs of the medical procedure.

13. Care Credit accounts can be used only to make charges at certain medical providers, including dentists and dermatologists; it is not possible to charge amounts from non-medical providers to a Care Credit account.

14. Synchrony later claimed $3,087 was owed by Mr. Clarke (the "**Debt**").

15. Synchrony reported the Debt to Experian as a non-medical debt, despite the fact that the entire Debt stemmed from a medical procedure. **SEE PLAINTIFF'S EXHIBIT A.**

16. Pursuant to the FCRA, the term "medical information" means "information or data, whether oral or recorded, in any form or medium, created by or derived from a health care provider or the consumer, that relates to … the provision of health care to an individual." *See* 15 USC 1681a(i)(1)(B).

17. As the full amount of the purported Debt related to charges concerning the provision of health care to Mr. Clarke, the Debt was "medical information" as defined by the FCRA.

18. Experian, like the other major nationwide CRAs, requires furnishers of data like Synchrony to report a "creditor classification code" ("**CCC**") which indicates the nature of the transaction.

19. A total of 15 different CCCs exist in the Metro 2® reporting language, which is a *lingua franca* used by the major nationwide CRAs to create uniform reporting standards.

Page 3 of 13

20. A CCC of "02" means "medical/health care," and a CCC of "08" means "banking."

21. Accounts reported with the "02" CCC are redacted and simply state "MEDICAL PAYMENT DATA" in reports that Experian furnishes to third parties.

22. If a consumer applies for a mortgage guaranteed through the Federal Housing Administration ("**FHA**") or any other government agent, accounts reported with the "02" CCC are excluded from the consumer's debt-to-income ratios.

23. Almost all commercially used credit scores, including most versions of FICO® as well as Vantage® credit scores, weight adverse information reported with an "02" CCC significantly less severely against the consumer than adverse information reported with any other CCC.

24. As of July 1, 2022, the major CRAs also delete paid derogatory tradelines from a consumer's credit history if the CCC is reported as "02" to ensure that consumers are not unfairly harmed by paid medical debts which were previously derogatory.

25. Since there was no balance reported for the Care Credit account as of May 2023 and its status was reported as "Paid in settlement," this means the entire derogatory tradeline would have been deleted by the CRAs had the CCC of "02" been correctly reported.

26. In May 2023, Mr. Clarke disputed Synchrony's tradeline to Experian, stating the reported data was not accurate and that, amongst other issues, the account should be reported as a medical debt if reported at all.

27. Experian sent Synchrony an *Automated Consumer Dispute Verification* ("**ACDV**") request through a system known as e-OSCAR and asked Synchrony to make a reasonable investigation into the dispute pursuant to the FCRA.

28. Synchrony responded to the ACDV request, confirming its tradeline was correct and required no modification, update, or deletion.

29. Synchrony had no basis to conclude the Debt was not medical in nature since its business records clearly showed the Debt consisted of *only* medical debt.

30. If a furnisher of data to a CRA, like Synchrony, confirms disputed information as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.*, 827 F.3d 1295 (11th Cir. 2016).

31. The standard for judging the reasonableness of procedures "is what a reasonably prudent person would do under the circumstances." *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984).

32. Synchrony is a large bank which receives thousands of ACDVs each month.

33. To minimize costs, Synchrony instructs its employees responding to ACDVs to quickly compare the information contained in the requesting CRAs file against Synchrony's own internal records.

34. On information and belief, Synchrony does not authorize its employees to make any actual investigation at all, beyond a *de minimis* comparison of CRA records to Synchrony's own records.

35. For this reason, a consumer who disputes something specific about the data being reported – such as an incorrect CCC – will have their information confirmed as "accurate" simply because Synchrony's own flawed records show as much, and, moreover, the

2024SC-000535-0000-LK        Received in Polk 01/23/2024 06:20 PM

employees/contractors answering the disputes are not trained to investigate disputes of this nature nor are they empowered to make such investigations.

36. No objective, reasonable investigation was made; any reasonable investigation would have determined that the Debt should have been reported with a CCC of "02" meaning "medical/health care."

37. Synchrony's failures were willful and intentional since they were the result of intentional policies put in place to minimize investigation costs, even though the accuracy of the investigations would be impaired.

38. Synchrony also failed to update its report to indicate that the information was "disputed by consumer."

39. The failure to report disputed information as disputed in and of itself violates the FCRA; *See Saunders v. Branch Banking and Trust Company of Virginia* 526 F.3d 142 (4th Cir. 2008). *Seamans v. Temple University*, 744 F.3d 853, 864 (3d Cir. 2014), (private cause of action arises under § 1681s2(b) when, having received notice of a consumer's potentially meritorious dispute, furnisher subsequently fails to report that claim is disputed).

40. Experian has furnished reports about Mr. Clarke to third parties – creditors, or potential creditors, which included the Debt improperly reported as non-medical debt.

41. CRAs such as Experian are required to conduct their own investigations into a dispute from a consumer. *See* 15 U.S.C. § 1681i(a)(1)(A).

42. On information and belief, rather than conduct its own independent reinvestigation, Experian, in response to the dispute received from Mr. Clarke, merely relied on the dispute response from Synchrony, blindly accepting the results and updating their reporting accordingly.

43. Experian determined that the electronic verification of the tradeline by Synchrony – something requiring only a few clicks of a computer mouse – was somehow more persuasive evidence than anything proffered by Mr. Clarke, even though Mr. Clarke's dispute and version of events was far more probable than that of Synchrony's. Moreover, even a cursory review of the Care Credit website quickly reveals the product is a medical-only charge card.

44. At the absolute minimum, Experian could not have believed that the Debt was *not* disputed by Mr. Clarke, and Synchrony's failure to report it as disputed should have been a red flag which indicated Synchrony's investigations were not reliable.

45. Upon receipt of the ACDV response, Experian utilized an automated system which made rudimentary checks of tradeline data between what Synchrony had reported and the data contained in Experian's own file on Mr. Clarke, *e.g.*, his name, address, date of birth, and Social Security number.

46. Such automated processes will not do anything to correct medical payment data reported as non-medical.

47. For at least the last 35 years, courts in this district have recognized that a CRA cannot rely solely upon its data furnisher when the consumer disputes the accuracy of the furnisher's version of events. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985) ("Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher].")

48. Mr. Clarke has hired the undersigned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## SYNCHRONY'S VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)

49. Mr. Clarke adopts and incorporates paragraphs 1 – 48 as if fully stated herein.

50. Synchrony violated **15 U.S.C. § 1681s-2(b)** when it failed to make a reasonable investigation after notice of dispute from a CRA, as any reasonable investigation would have concluded the Debt – which was entirely medical in nature – should be reported with a CCC of "02" and, as such, Synchrony's reported information was not accurate and complete without modification.

51. The information Synchrony reported and verified was clearly inaccurate, and indeed no reasonable investigations were actually conducted by Synchrony.

52. Synchrony's actions were either willful and intentional or, alternately, it acted with reckless disregard for its duties under the FCRA to make reasonable investigations.

53. It is reasonably foreseeable that Synchrony's actions and policies would cause Mr. Clarke harm.

54. Synchrony's conduct caused Mr. Clarke to suffer damages to his credit report and scores, as well as emotional distress in having to deal with an account being reported which he disputed to no avail.

55. As a result of its conduct, Synchrony is liable to Mr. Clarke pursuant to the FCRA for actual damages, statutory damages of up to $1,000 for *each occurrence*, and other relief.

56. Alternatively, Synchrony's conduct was negligent, and Synchrony is liable for Mr. Clarke's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Mr. Clarke respectfully requests this Honorable Court enter judgment in his favor, and against Synchrony, for:

a. The greater of Mr. Clarke's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Clarke's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and / or 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT II
### EXPERIAN'S VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

57. Mr. Clarke adopts and incorporates paragraphs 1 – 48 as if fully stated herein.

58. Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to make a reasonable reinvestigation into a dispute from Mr. Clarke, since any reasonable investigation would have concluded the Debt was medical in nature.

59. Experian's conduct was willful and intentional, or, alternately, Experian acted with reckless disregard for its duties under the FCRA to investigate consumer disputes.

60. Experian is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Clarke's actual damages and statutory damages of up to $1,000 for *each occurrence*, plus reasonable attorneys' fees and costs.

61. Alternatively, Experian's conduct was negligent, and Experian is liable, pursuant to 15 U.S.C. § 1681o, for Mr. Clarke's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Mr. Clarke respectfully requests this Honorable Court enter judgment in his favor, and against Experian, for:

a. The greater of Mr. Clarke's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Clarke's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Mr. Clarke hereby demands a jury trial on all issues so triable.

Respectfully submitted on January 23, 2024, by:

> **SERAPH LEGAL, P.A.**
>
> */s/ Brandon D. Morgan*
> Brandon D. Morgan, Esq.
> Florida Bar Number: 1015954
> BMorgan@SeraphLegal.com
> Thomas M. Bonan, Esq.
> Florida Bar Number: 118103
> TBonan@SeraphLegal.com
> 2124 W. Kennedy Blvd., Suite A
> Tampa, FL 33606
> Phone: (813) 567-3434
> Fax: (855) 500-0705
> *Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**
A    Mr. Clarke's Experian Consumer Disclosure, November 28, 2023, Synchrony Tradeline – Excerpt

# PLAINTIFF'S EXHIBIT A
## Mr. Clarke's Experian Consumer Disclosure, November 28, 2023
## Synchrony Tradeline - Excerpt



Page 11 of 13

# PLAINTIFF'S EXHIBIT A
## Mr. Clarke's Experian Consumer Disclosure, November 28, 2023
## Synchrony Tradeline - Excerpt



Page 12 of 13

# PLAINTIFF'S EXHIBIT A
## Mr. Clarke's Experian Consumer Disclosure, November 28, 2023
### Synchrony Tradeline - Excerpt



Page 13 of 13